HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMARA BUDDLE-VLASYUK,

        Plaintiff,

v.

THE BANK OF NEW YORK MELLON, as trustee for the certificate holders of CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-8; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING, L.P.,

        Defendants.

No. 11-CV-5561 RBL

Order

[Dkt. #13]

## I.     INTRODUCTION

Plaintiff Tamara Buddle-Vlasyuk presents claims arising from the attempted foreclosure of her residential property by Defendants Bank of New York Mellon (as trustee for the CWABS, Inc., Asset-Backed Certificates, Series 2006-8); Recontrust Company, Inc.; Mortgage Electronic Systems, Inc.; and BAC Home Loans Servicing, L.P. *See* Compl. Ms. Buddle-Vlasyuk alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Real Estate Settlement Procedures Act ("RESPA"), the Washington Deed of Trust Act, RCW 61.24 et seq., and claims that Defendants slandered title to her property. Before the Court is Defendants' Motion to Dismiss [Dkt. #13]. Because the Complaint lacks factual support under any legal theory, the Court **GRANTS** the motion and **DISMISSES** the case with prejudice.

Order - 1

## II. FACTUAL BACKGROUND

**A. Plaintiff's Loan and Default.**

Ms. Buddle-Vlasyuk has filed a form complaint, nearly identical copies of which the Court has already dismissed. *See Van Nguyen v. Recontrust Co., N.A.*, No. 11-cv-5642, 2012 WL 34259 (W.D. Wash. Jan. 6, 2012); *Oliveros v. Deutsche Bank Nat. Trust Co., N.A.*, No. 11–cv–05581, 2012 WL 113493 (W.D. Wash. Jan. 13, 2012).

In March 2006, Plaintiff borrowed $295,000 to purchase the residential property in dispute here. Compl., Ex. B [Dkt. #1]. Plaintiff executed both a promissory note ("Note") and deed of trust ("Deed"), the latter of which grants the Note-holder the power to foreclose in the event of default. *Id.* at 26. The Deed lists Countrywide Home Loans, Inc. as the lender, Ms. Buddle-Vlasyuk as the borrower, and MERS as the nominee for the lender and the lender's assigns. *Id.* Countrywide subsequently sold the Note to Bank of New York, as trustee for CWAB Asset-Backed Securities.

In March 2009, Ms. Buddle-Vlasyuk defaulted on her loan. *Id.*, Ex. E. Ms. Buddle-Vlasyuk acknowledges signing the Note and Deed and does not dispute default. Aff. of Tamara Buddle-Vlasyuk at 1 [Dkt. #1–2].

On February 8, 2010, MERS assigned the Deed to Bank of New York, and the Bank simultaneously appointed Recontrust as the successor trustee. *Id.*, Exs. C & D. On December 29, 2010, Recontrust recorded a Notice of Trustee's Sale. *Id.*, Ex. E.

**B. Plaintiff's Claims.**

Ms. Buddle-Vlasyuk does not dispute default; rather, the basis of her claims lies in her concern that Bank of New York does not own her Note:

> I have not seen the Note since the date and time that I signed it; I do not know if, where or to whom my Note was sent after I signed it; I do not know if the Lender and/or Successor(s) is/are civilly bankrupt, civilly dead or a debtor in possession and able to make its own claim because these facts are being fraudulently concealed. . . . I am unable to make a legal determination, and cannot speculate as to whether my Note is/was held, sold, exchanged for cash . . . or if there has been any attempt to return it or present it to me. . . . I deny the authenticity of all purported versions of the Note whether purported to be original, copies or certified copies ***until I am afforded opportunity to inspect the purported Note*** . . . .

Buddle-Vlasyuk Aff. at 4 (emphasis added); *see also* Compl. at 8 (alleging that Ms. Buddle-Vlasyuk is "unaware of any evidence that the purported Note was ever endorsed or transferred to the Defendant . . ."). The Deed, however, grants the lender the power to sell the Note without notice to Ms. Buddle-Vlasyuk. *Id.* ¶ 20 ("The Note or a partial interest in the Note . . . can be sold one or more times without prior notice . . . .").

Based on these facts, Ms. Buddle-Vlasyuk asserts a variety of claims. First, the Complaint presents a RESPA claim, 12 U.S.C. 2605(e), alleging that Ms. Buddle-Vlasyuk sent a qualified written request but "never received any response and/or received an inadequate response." Compl. at 5.

Second, Ms. Buddle-Vlasyuk claims that Defendants violated the FDCPA, 15 U.S.C. § 1692, by failing to offer verification of her debt, by failing to "sen[d] a dunning letter," and by taking "non-judicial action." *Id.*

Third, Ms. Buddle-Vlasyuk claims Defendants erroneously reported her default to credit reporting agencies and thus violated the FCRA, 15 U.S.C. § 1681. *Id.* at 6.

Fourth, Ms. Buddle-Vlasyuk presents a claim for "recoupment and setoff," citing a number of federal and state securities laws, and arguing that "[t]here is no evidence of the Defendant(s) standing to foreclose non-judicially." Compl. at 7.

Fifth, the Complaint asserts a violation of the Washington Deed of Trust Act, RCW 61.24. Compl. at 8. Ms. Buddle-Vlasyuk asserts generally that "RECONTRUST failed to provide statutory notices" and "failed to follow the prerequisites of trustee's sale [sic]"—specifically, Recontrust fails to "maintain a street address in this state." *Id.* Further, Ms. Buddle-Vlasyuk asserts that "there is no evidence that [Bank of New York] is the Beneficiary Note Holder." *Id.*

Lastly, the Complaint presents a claim for slander of title. *Id.* at 8. In short, Ms. Buddle-Vlasyuk argues that Defendants slandered title to her property by causing Recontrust to record a Notice of Default. *Id.*

Ms. Buddle-Vlasyuk seeks declaratory and injunctive relief, including rescission of the deed, and monetary damages.

## III. DISCUSSION

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* ).

Here, the Complaint fails to state facts sufficient to sustain a claim under any legal theory, and thus Ms. Buddle-Vlasyuk's claims fail as a matter of law.

**A. Plaintiff's RESPA Claim Lacks Factual Support and Is Not Plausible on Its Face.**

Ms. Buddle-Vlasyuk's RESPA claim lacks any factual support and is not plausible on its face. RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). A "qualified written request" ("QWR") is defined as a written document including the name and account of the borrower and "includes a statement of the

reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  When a loan servicer receives a QWR, RESPA requires that:

> Action with respect to inquiry: Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

      The Complaint fails to identify the nature of the alleged qualified written request, the date sent, or the supposed reason that the response was "inadequate."  Compl. at 5.  Further, the Complaint fails to allege harm.  Under RESPA, a borrower may recover actual damages for a lender's failure to respond to a qualified written request, as well as statutory damages of $1,000 if she can establish that the lender's failure to respond is part of a pattern or practice. *See* 12 U.S.C. § 2605(f)(1). The Complaint pleads neither actual damages nor a pattern of failure.

**B. Plaintiff's FDCPA Claim Fails Because Defendants Are Not "Debt Collectors."**

      The Complaint fails to allege facts sufficient to show that Defendants are "debt collectors" within the meaning of the FDCPA.  *See* 15 U.S.C. § 1692a.  The law is well settled that the "FDCPA's definition of debt collector does not include the consumer's creditors, a

mortgage servicing company, or any assignee of the debt." *Segle v. PNC Mortg.*, 2011 WL 1098936, at *7 (W.D. Wash. Mar. 25, 2011) (citing *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010) (collecting cases)). As such, Defendants are not subject to the FDCPA here.

**C. Plaintiff's FCRA Claim Lacks Factual Support and Is Not Plausible on Its Face.**

Ms. Buddle-Vlasyuk has pled no facts in support of her FCRA claim, which appears to be simply a corollary to her main claims (i.e., because Defendants improperly foreclosed, any report of her default must be improper as well). Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (quotation omitted). The FCRA imposes duties on furnishers of information to credit reporting agencies ("CRAs"). *See* 15 U.S.C. §§ 1681s-2(a)(3) & 1681s-2(b). After receiving notice of a dispute from a CRA, furnishers must "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s-6 2(b)(A), (C). Importantly, "[t]hese duties arise only after the furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154.

Here, Ms. Buddle-Vlasyuk fails to identify any erroneous report made to any credit rating agency or facts supporting that she properly disputed any report with the credit rating agencies. *See* Compl. at 5–6. Thus, the Court dismisses the claim.

**D. Plaintiff's Claim for Recoupment and Setoff Lacks Factual Support and Is Not Plausible on Its Face.**

Ms. Buddle-Vlasyuk cites a number of federal and state securities laws in an attempt to affirmatively claim recoupment and setoff. The claim is not viable as a matter of law and, in any event, the Complaint fails to allege any facts in support of such a claim.

**E. Plaintiff's Claim Under the Washington Deed of Trust Act Lacks Factual Support and Is Not Plausible on Its Face**.

Ms. Buddle-Vlasyuk asserts that Recontrust violated the Washington Deed of Trust Act, RCW 61.24, by "fail[ing] to provide statutory notices" and "fail[ing] to follow the prerequisites of trustee's sale [sic]"—specifically, Recontrust failed to "maintain a street address in this state." *Id.* The Complaint, however, includes no facts concerning what "prerequisites" Recontrust failed to follow, why she believes Recontrust failed to maintain a street address, or how she was harmed. *See Amresco lndep. Funding, Inc. v. SPS Properties, LLC*, 129 Wn. App. 532, 537 (2005) ("Despite the strict compliance requirement, a plaintiff must show prejudice before a court will set aside a trustee sale."); *Queen City Sav. & Loan Ass'n v. Mannhalt*, 111 Wn.2d 503, 510 n.17 (1988); *Steward v. Good*, 51 Wn. App. 509, 514 (1988) (noting the "requirement that prejudice be established" where a "technical violation" of the Deed of Trust Act occurs and finding that "there [was] no showing of harm to the debtor").

Further, Ms. Buddle-Vlasyuk appears to present a "show-me-the-note" claim: "there is no evidence that [Bank of New York] is the Beneficiary Note Holder." Compl. at 8. Courts of this district routinely reject these claims. *See, e.g.*, *Mikhay v. Bank of Am.*, *NA.,* 2011 WL 167064, *2–*3 (W.D. Wash. 2011); *Wright v. Accredited Home Lenders*, 2011 WL 39027 (W.D. Wash. 2011); *Pelzel v. First Saving Bank Northwest,* 2010 WL 3814285, at *2 (W.D. Wash. 2010); *Wallis v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1200 (W.D. Wash. 2010); *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276, at *6 (W.D. Wash. 2010). Indeed, the Washington Deed of Trust Act requires that a foreclosing lender demonstrate its ownership of the underlying note to the trustee, not the borrower. RCW 61.24.030(7). Thus, Ms. Buddle-Vlasyuk's claims under the Washington Deed of Trust Act fail.

Lastly, Ms. Buddle-Vlasyuk objects to MERS's assignment of the Deed. Compl. at 9. But, Ms. Buddle-Vlasyuk identifies no action that MERS took in her regard—it sent no notice of default, recorded no notice of trustee's sale, and took no other discernible action directly affecting her. In any event, the Ninth Circuit has held that MERS may properly serve as beneficiary. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041–42 (9th Cir. 2011).

### F. Plaintiff's Slander-of-Title Claim Fails Because Recontrust Properly Recorded the Notice of Trustee's Sale.

Ms. Buddle-Vlasyuk alleges that Defendants slandered title to her property by recording a Notice of Trustee's Sale.[1] Compl. at 8. To succeed on a slander-of-title claim, a plaintiff must show (1) false words; (2) maliciously published; (3) referencing a pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in pecuniary loss to plaintiff. *Rorvig v. Douglas*, 123 Wn.2d 854, 859–60 (1994).

Here, Ms. Buddle-Vlasyuk has not alleged that Defendants maliciously recorded the Notice of Trustee's Sale. Indeed, Washington law requires Recontrust to record such a notice following a borrower's default. *See* RCW 61.24.030. The Complaint therefore lacks sufficient facts to maintain a claim for slander of title.

### G. Amendment Would Be Futile.

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

The essential facts are not in dispute in this case; thus, the Court denies leave to amend.

///

///

///

---

[1] Although the Complaint references a notice of default, a document not typically recorded, the Court will presume that Ms. Buddle-Vlasyuk intended to reference the Notice of Trustee's Sale, which was recorded in this case.

Order - 8

## IV. ORDER

For the reasons stated above, the Court **GRANTS** the Motion to Dismiss [Dkt. #13], and **DISMISSES** the case with prejudice.

DATED this 27th day of January, 2012.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE